## AMADEE EAGLE v. THE STATE.

No. 19972.   Delivered December 7, 1938.

The opinion states the case.

*H. H. Shelton* and *Earl Shelton,* both of Austin, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

MORROW, PRESIDING JUDGE.—Assault with intent to murder is the offense; penalty assessed at confinement in the penitentiary for two years.

Drew Dodson, the alleged injured party, testified that he was an attendant at the Lock Filling Station on South Congress Avenue in the city of Austin; that on the afternoon of December 25, 1937, the appellant and three other negroes drove up to the filling station in an automobile for the purpose of purchasing some gasoline. Appellant asked for permission to use the restroom. Dodson referred him to Mr. Lock, who was in charge of the station, and appellant was refused the privilege of using the restroom. Appellant said: "I will not buy any more gas. * * * I will see that my company don't buy it." Dodson replied: "The best thing you can do is to shut up and get on out of here." Appellant then struck at Dodson, who in turn hit the appellant. At this point the appellant cut Dodson with a knife. Mr. Lock came out of the station and shoved the appellant back. He then jumped in his car and drove off. Dodson was taken to a hospital where his wound was dressed by a doctor. He was permitted to leave the hospital that night. On the following morning Dodson went to Driftwood (a distance of about 25 miles) to visit his mother and returned to Austin on the afternoon of the next day. From Dodson's testimony on cross-examination we quote: "From the time I received the wound up until immediately thereafter, I continued to pursue my ordinary avocation, walking around, eating, and cir-

culating, until the time I went back to work the middle of next week."

The doctor who attended Dodson at the hospital testified that the cut (which was four or five inches in length) came down about an inch below the collar bone; that the lower end of the wound was about four or five inches from the heart; that the cut was "fairly close" to some large blood vessels in the vicinity of the heart. The cut was described as a "superficial wound." According to the doctor, while the wound was not one that, under proper medical care, would likely result in death, still it was in the region of blood vessels in the proximity of the heart, the severance of which could have produced death.

Appellant testified that he and his companions were on their way to San Antonio on the afternoon of Christmas Day, 1937, and stopped at Lock's Filling Station to buy some gasoline. The negroes requested permission to use the restroom and were told by Dodson to "ask the boss inside." The man on the inside (Mr. Lock) said: "You negroes can use the restroom this time, but don't use it no more." Some words passed between the parties after which the appellant said: "We just won't buy any more gas here." Dodson replied: "You needn't talk so smart about it." According to the appellant, as he walked to the front of his car, he was struck in the back of the head, and as Dodson was in the act of delivering the second blow, the appellant cut him with a knife. Immediately after striking Dodson with the knife, appellant turned around and went to the car. Appellant testified that when Dodson hit him the second time it looked like he had something in his hand—an ice pick or a screw driver—which struck him on the arm and hurt pretty bad. From the appellant's testimony we quote: "I did not intend to kill Dodson. It looked like he wouldn't stop hitting me, and when I did stop him, I didn't even put down the hood of the car, just jumped in and got away as quick as I could."

Appellant struck Dodson one time with a knife which he described as a "pen knife," the length of which was between three and four inches. According to the appellant, "the whole knife might have been three inches long, but the blade was less than three inches."

Several witnesses testified for both the State and the appellant giving different versions of the encounter, and especially as to who was the aggressor; that is, who struck the first blow.

The only question presented for review is the sufficiency of

the evidence to support the conviction of assault with intent to murder.

The rule is well established that to constitute the offense of an assault with intent to murder, it is essential that there be an assault and a specific intent to kill. Whether there was an intent to kill is a question of fact for the jury to be determined from the evidence adduced as to the weapon used. As to whether or not a knife is to be considered a deadly weapon, we quote from 4 Tex. Jur., p. 871, Section 34, as follows: "As a general rule a knife is not to be assumed to be a deadly weapon in the absence of any showing of its deadly character, its size, the seriousness of the wounds inflicted thereby, or other circumstances tending to show its deadly character. An ordinary pocket knife is not *per se* a deadly weapon; its character as such depends upon the size and shape of the blade, and its capacity to produce death when used to stab."

From our examination of the testimony relative to the size of the knife in question and the manner in which it was used, together with the nature of the wound inflicted upon the alleged injured party as testified to by the attending physician, we are of the opinion that the evidence fails to meet the requirement of the law to the effect that it must be shown that the assault was committed with a deadly weapon or an instrument capable of producing death or serious bodily injury.

From Branch's Criminal Law, p. 339, Section 517, we take the following quotations: "If the weapon is not shown to be deadly, or wounds serious, it is not assault to murder, though defendant said he intended to kill; the desire to kill is not proof that the weapon was deadly"; and, "Proof that weapon used was a pocket knife is not sufficient of itself to show that the intent was to kill."

See Dodd v. State, 113 S. W. (2d) 540, and cases cited therein; also Martinez v. State, 35 Texas Crim. Rep. 586.

Deeming the evidence insufficient to sustain the conviction, the judgment is reversed and the cause remanded.