## J. C. Richards v. The State.

No. 22742.  Delivered February 2, 1944.
Rehearing Denied March 22, 1944.

The opinion states the case.

*E. T. Simmang* and *John Simmang*, both of Giddings, for appellant.

*Ernest S. Goens*, State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was charged with an assault to murder on Mrs. Leona Sloan, and upon his conviction for an assault to murder without malice he was awarded a penalty of one year in the penitentiary; from a judgment predicated thereon he appeals.

The State's testimony shows that on July 5, 1943, Mrs. Sloan and her husband owned a cafe in the town of Milano. This was a small eating place, and at the time in question same was filled with soldiers who were being served by the cafe proprietors. Appellant and a companion came into the cafe and sat down on one of the stools at the counter. Appellant appeared to be angry, and was using some profane language, and had his open knife in his hand, pecking with it on the counter. He was remonstrated with by Mrs. Sloan as to his language and conduct, and gave answer that he "knew she didn't like such but he didn't give a damn." About that time he threatened to clean out the crowd that was present in the cafe, and especially the soldiers present. The father of Mrs. Sloan, Mr. Stevenson, who was old and partially deaf, came in the cafe at such time, and appellant, seeing him, said, "Well, there is old man Stevenson, the son-of-a-bitch; I will just cut his head off." While making a motion toward the old man, Mrs. Sloan stepped in front of her father, and appellant then said, "I will just cut her G - d throat," and he struck at her throat, and she drew back quickly and the knife missed her throat. Again he struck at Mrs. Sloan, and her sister, who was back of Mrs. Sloan, jerked her back and into the kitchen, at which time Mrs. Sloan's husband possessed himself of a chair and struck appellant with the same, and Gratt Sloan, a son of Mr. Sloan, ran in and took the knife away from appellant. They then took him out of the cafe, and it seems that old man Stevenson struck him with his fist after he had been taken out of the cafe some distance.

Appellant's version of the trouble is entirely different from the above. He had four small children, and was waiting at the

depot with his mother, the children's grandmother, to take the train for California, having purchased his tickets, although he had had some trouble doing so; that his mother, who was helping him with his children, who were all very small, told him to get some food for the children; they were hungry. That he went to the Sloan cafe and sat down at the counter; that he tried to attract the attention of the waitresses, but was unable to do so; that he may have used some language that should not have been used, but none of it was threatening. Becoming impatient, he finally decided to get a couple of coca colas from the ice-box near the end of the counter, close to the kitchen, and he arose for that purpose, and when he approached the box Mr. Sloan knocked him down with a chair and broke a bone in his arm; that some soldiers then took his knife away from him, and took him out of the house. When he and his companion had gotten about 25 or 30 steps from the house Mr. Sloan, his son and Mr. Stevenson set upon him, and the latter "worked him over." He did not know why any one should have hit him; he had no ill will towards any of them. Mrs. Sloan did not come out near him; he did not tell her he was going to cut her throat, and he did not cut at her; he knew of no reason why he should want to cut her head off; he did not threaten to cut anybody; these people were his friends. No one asked him to keep quiet, and he made no remark relative to Mr. Stevenson. He did not know why Mr. Sloan hit him with the chair; he only wanted a couple of cokes. Mrs. Sloan was not in the scuffle at all. He was not doing anything when he got hit with the chair. He had no idea of hurting this woman; she had not done him any harm, and he had had no trouble with Mr. Sloan, and did not expect Mr. Sloan to hit him with any chair.

It is contended that the trial court erred in failing to charge the jury on the law of self-defense, as was requested in special charge No. 2. We have summarized the theory of both the State and the appellant relative to this transaction, and we do not believe that the evidence raises such an issue. Under the State's theory there was naught passed between appellant and Mrs. Sloan, or Mr. Sloan, save her effort to calm down the appellant and keep him from hurting her father, the appellant denying such. According to the State's theory, the assault upon Mrs. Sloan then took place, with no violence toward appellant, nor prospect thereof, being present at such time. Appellant agrees with the portion thereof as to violence either present or contemplated. The State's theory relative to the slash at Mrs. Sloan's throat having taken place prior to the time any violence was offered to appellant by Mr. Sloan and the chair, ap-

pellant's theory being that at the time he was hit by the chair he had done absolutely nothing, and nothing had been done to him by anyone; that he did nothing further save to leave the 1oom after having been struck by the chair. He had already assaulted the lady, if at all, prior to being struck, and he did nothing further after this violence had been offered him. We do not think the doctrine of self-defense is presented by any of the evidence of either side to· this controversy, and same should not have been charged upon by the trial court. Had such been presented, however, by any evidence, a proper charge thereon should have been given. See McDonald v. State, 55 Texas Cr. R. 208, 116 S. W. 47.

We find in the record a bill of exceptions which is based upon a complaint to the effect that a physician was asked by the State a question ·which embodied the State's theory relative to this alleged assault, the physician answering that by a knife of the size and description shown a mortal wound could have been inflicted by a man of ordinary size and strength on a person's neck. In other words, we think such testimony merely showed that the knife presented, and which was the one claimed by the State to be the knife appellant used at the time an assault was claimed to have been made upon Mrs. Sloan, was a deadly weapon, and capable of producing death by ·the mode and manner of its use. We think this was a legitimate matter of proof. An ordinary pocket knife is not "per se" a deadly weapon, and its character as such depends upon the size and shape of the blade and the mode and manner of its use. Eagle v. State, 135 Texas Cr. R. 606, 122 S. W. (2d) 304; 4 Tex. Jur., p. 871, Sec. 34; Martinez v. State, 35 Texas Cr. R. 386, 33 S. W. 970.

An indictment for an assault to kill also charges an aggravated assault, and the court devoted a portion of his charge to defining an aggravated assault. Art. 1160, p. 512, Vernon's P. C. Vol. 2.

The objection offered to the proof by the physician as to the deadly nature of the knife was mainly that the effect of such a knife upon the throat of an ordinary person was a matter of common knowledge and not a matter for expert testimony. If such be true, then we think such a statement by the physician could not have resulted in any injury to appellant.

We see no error reflected in this record, and accordingly affirm the judgment of the trial court.

ON MOTION FOR REHEARING.

KRUEGER, Judge.

Appellant, in his motion for rehearing, seriously contends that in our original opinion we erred in two respects: First, by overruling his contention that the trial court, in declining to submit his requested charge on the law of simple assault, committed error; and second, in declining to instruct the jury on the law of self-defense. We will discuss the questions in the order presented.

If the issue of simple assault was raised by the evidence, then, of course, appellant was entitled to such an instruction. If not, then the court was correct in refusing to submit that issue. We have again reviewed the record with this object in view and remain of the opinion that the issue was not raised. He contends, as we understand from his motion, that there is no evidence that he was an adult male person and that Leona Sloan was a female. With this contention we are unable to agree. The statement of facts shows that Leona Sloan was referred to by the witnesses as "Mrs. Sloan." Gratt Sloan testiled:"My stepmother's name is Leona Sloan. She stepped in between daddy and J. C. Richards, and when she did, J. C. said; 'I will just cut your G-- d--- throat.' * * * I caught his right arm with my left hand and got hold of the knife blade." Leona Sloan, the alleged injured party, testified: "My name is Mrs. Leona Sloan." We fail to see how this leaves any doubt as to whether she is a female or not. When the testimony unqualifiedly shows that she was Mrs. Sloan, it was tantamount to saying that she was a female. Consequently, the assault, if any, was made upon the person of a female.

Appellant also contends that the evidence fails to show that he was an adult male person. This contention is equally without merit. The evidence shows that he was the father of four children, whose ages were eight, six, four and two years. We do not think this leaves any room for doubt as to whether or not he was an adult male person.

His second contention is that we erred in not holding that he was entitled to an instruction on the law of self-defense. This issue was not raised by any evidence; hence he was not entitled to such instruction. The record reflects that Mrs. Sloan did not by word or act say or do a thing which indicated that she was going to kill him or inflict serious bodily injury upon him. All she did was to talk to him, begging and requesting him to cease

cursing and to keep quiet. Appellant did not claim that she, by word or act, made any demonstration which indicated to him that she was going to do him any harm. Of course, after he had struck at her with a knife, known as an "East Dallas Special," some of the men appeared upon the scene and "worked him over" but the assault, if any, upon Mrs. Sloan had already occurred.

Believing that the case was properly disposed of on the original submission, the motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.