Mary Helen **DENHAM**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 56136.

Court of Criminal Appeals of Texas, En Banc.

Dec. 13, 1978.

W. John Allison, Jr. (on appeal only), Dallas, for appellant.

Henry M. Wade, Dist. Atty., William M. Lamb and Dan Garrigan, Asst. Dist. Attys., Dallas, for the State.

## OPINION

W. C. DAVIS, Judge.

This is an appeal from a conviction for aggravated assault; the punishment assessed is imprisonment for 10 years. The indictment alleges that the appellant used a knife, a deadly weapon, intentionally to threaten imminent bodily injury to the complainant.

Appellant's sole contention is that the evidence is insufficient to prove that the knife she used to stab the complainant was a deadly weapon. The knife, which was not offered for identification nor introduced in evidence, was described by the complainant, without contradiction, as a butcher knife with a blade seven or eight inches long.

The complainant was a supervisor at a laundry where appellant had been employed. Two days after he had fired appellant for absenteeism, the complainant was on the way to visit a friend when he saw appellant walking along the sidewalk. He stopped and gave appellant a ride as far as his destination. A few minutes after the complainant had entered his friend's house, appellant came to the door and asked to use the bathroom. She entered the house, walked into a back room, and shortly thereafter returned with her hands behind her back. Appellant walked over to where the complainant was sitting, leaned over as if to whisper in his ear, and stabbed him in the shoulder. She then backed away several feet and shouted, "Get up because you're next on my list." The complainant, who testified that he was in fear for his life,

grabbed a chair with which to fend off appellant, after which appellant retreated to the front door and left.

"Deadly weapon" is defined in V.T.C.A., Penal Code, Section 1.07(a)(11) as:

"(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or

"(B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury."

It has been held under the former Penal Code, as well as the present Penal Code, that a knife is not a deadly weapon per se. *Harris v. State,* 562 S.W.2d 463 (Tex.Cr. App.1978); *Danzig v. State,* 546 S.W.2d 299 (Tex.Cr.App.1977); *Windham v. State,* 530 S.W.2d 111 (Tex.Cr.App.1975); *Williams v. State,* 477 S.W.2d 24 (Tex.Cr.App.1972); *Barnes v. State,* 172 Tex.Cr.R. 303, 356 S.W.2d 679 (1961); *Henderson v. State,* 55 Tex.Cr.R. 170, 115 S.W. 588 (1909); 4 Branch's Ann.P.C., 2nd., ed., section 1573, p. 132.

Although a knife is not a deadly weapon per se, it has been held that it can qualify as such through the manner of its use, its size and shape and its capacity to produce death or serious bodily injury. *Richards v. State,* 147 Tex.Cr.R. 118, 178 S.W.2d 517 (1944); *McElroy v. State,* 528 S.W.2d 831 (Tex.Cr.App.1975); *Abels v. State,* 489 S.W.2d 910 (Tex.Cr.App.1973). Under the former Penal Code there was no statutory definition of deadly weapon, *Mosley v. State,* 545 S.W.2d 144 (Tex.Cr.App. 1976). The current Penal Code, as above set out, does contain such a definition and broadens the above considerations to include "or its intended use." Further, it has been held that the wounds inflicted on the injured is also a factor that is considered in determining the character of the weapon. *Reed v. State,* 149 Tex.Cr.R. 208, 192 S.W.2d 890 (1946); *Williams v. State,* 477 S.W.2d 24 (Tex.Cr.App.1972). This does not, however, mean that wounds must be inflicted before a knife can be determined to be a deadly weapon. *Richards v. State,* supra.

The evidence introduced at the trial showed that the complainant was stabbed with a seven or eight inch blade butcher knife and that he felt that the knife was a deadly weapon. The complainant testified as follows:

"Q. Okay. Now, after she stabbed you and backed off with the knife, started coming at you again, were you scared at that point?
A. Sure, Yes.
Q. What were you afraid she was going to do to you?
A. She was going to kill me. Thought she was going to stab me again.
Q. So you—at that time you were in fear for your life?
A. Yes, sir.
Q. And this particular knife, did you feel that it was a deadly weapon?
A. Yes, sir.
Q. Did you feel that it could kill you?
A. Yes, sir.
Q. How long was the blade again, about how long?
A. (Indicating)
Q. About like that, about what—seven, eight inches?
A. About seven or eight inches.
Q. It's a butcher knife, is that right?
A. Butcher, Yes, sir."

■ In this State, the opinions of lay witnesses, when competent, are admissible concerning sanity, insanity, value, handwriting, intoxication, physical condition—health and disease, estimates of age, size, weight, quantity, time, distance, speed, identity of persons and things. McCormick and Ray, Texas Law of Evidence, Sections 1421 through 1436. Surely one who observes and receives a wound from a butcher knife is capable of testifying that the knife is a deadly weapon capable of causing death or serious bodily injury. We decline to hold that further testimony is needed to justify the jury in finding such knife to be a deadly weapon. This is common knowledge that any lay witness is competent to testify to.

In the case of Acosta v. State, 77 Tex. Cr.R. 643, 179 S.W. 870 (1915), this Court held:

"Appellant contends that a razor is not per se a deadly weapon. We are inclined to believe that all mankind know that death can be inflicted by a razor in the hands of a grown man."

In the recent case of Limuel v. State, 568 S.W.2d 309 (Tex.Cr.App.1978), a robbery victim named Floyd testified that the appellant slipped up behind him and grabbed him, placed a knife in his throat, and stated, "Give me what you got." After taking Floyd's money, appellant came around to the front and stabbed him in the stomach. In connection with his wound, Floyd testified, "He stick me into my liver. Had to operate on me that night." There was no medical testimony as to the nature or severity of the wounds or the operation, nor was there any evidence as to the size of the knife or expert testimony that it was capable of causing death or serious bodily injury. In a unanimous opinion by Panel No. 2, Second Quarter, 1978, this Court held:

"In the instant case while there was no medical testimony as to the nature of the wounds, and while the knife taken from appellant's possession was not introduced into evidence, we conclude the evidence sufficient to show the knife used to be a deadly weapon. . . . The manner in which the knife was used and the wound inflicted were sufficient to bring the knife within the definition of the deadly weapon."

As stated in the dissent in Harris v. State, supra, "To say that a four-inch bladed knife, whether it is a pocket knife or some other type, is not a deadly weapon unless an expert so testifies is to strain the bounds of reason."

Insofar as Harris v. State, supra, or Danzig v. State, 546 S.W.2d 299 (Tex.Cr.App. 1977), require such expert testimony, they are reversed.

■ Furthermore, the description of the weapon as a butcher knife with a seven or eight inch blade, and testimony concerning its intended use by appellant, was sufficient to authorize the jury to find such to be a deadly weapon.

The evidence in this case is sufficient to prove the knife a deadly weapon. The judgment is affirmed.

TOM G. DAVIS, concurring in part and dissenting in part.

I concur in the result reached in the majority opinion insofar as it holds that the size of the knife, the mode and manner of its use, and the wounds inflicted on the injured party support a finding that the knife was a deadly weapon.

As was recognized in *Harris v. State*, 562 S.W.2d 453, it has long been held that a knife may qualify as a deadly weapon through the manner of its use and that the wounds inflicted on the injured party may be looked to in determining this issue. Under V.T.C.A. Penal Code, Sec. 1.07, the manner of the weapon's "intended use" can be considered. See *Limuel v. State*, 568 S.W.2d 309. The holding in *Harris* " . . . that the evidence regarding the 'manner of its use or intended use' is insufficient to show that the pocket knife was capable of causing death or serious bodily injury" was based on facts clearly distinguishable from the instant case. In *Harris,* neither the victim nor the witness saw a knife, there was no showing of blood on the pocket knife in the defendant's possession, and the injuries were not considered serious enough by the victim or the investigating officer to require medical attention. While the officer witness in *Harris* described a movement of the defendant toward the victim as "It was kind of a slashing move," he was unable to state which one of the parties had a weapon, much less identify what type of weapon was used, as evidenced by his testimony, "I felt like one of them [either the defendant or victim] had some type of weapon." The tenuous facts of *Harris* are in sharp contrast to those in the instant case, and I cannot agree that the affirmance herein requires the overruling of *Harris.*

It is undisputed that a knife cannot qualify as a deadly weapon per se under V.T.C.A. Penal Code, Sec. 1.07(a)(11). The reversal in *Danzig v. State,* 546 S.W.2d 299, upon the insufficiency of the evidence to prove a pocket knife a deadly weapon is bottomed upon the facts of that case and does not stand for the proposition that expert testimony is required in every case to prove that a knife is a deadly weapon. In those instances where the manner of its use or intended use, its size and shape, and resulting injuries, if any, fail to prove deadly weapon, opinion evidence as to whether the knife was a deadly weapon may make the difference in meeting the burden of proof. I have no quarrel with the majority's position that the opinion of a layman who observes and receives a wound from a knife should be able to express an opinion as to whether the instrument was a deadly weapon, but obviously such lay opinion is not entitled to the weight of an opinion expressed by a doctor who has experience in treating knife wounds, or the opinion of a veteran police officer who has investigated altercations in which knives have been used, or morticians who had had an opportunity to examine knife wounds which have resulted in death. Further, it is not unreasonable to expect that anyone who is attacked by a person wielding a knife will be so engulfed with fear as to produce an opinion that any knife, regardless of size or its use, would be a deadly weapon. Thus, insofar as the majority tends to equate lay opinion with that of experts, I cannot agree. In the final analysis, whether opinion evidence, if any, is necessary, and whether lay or expert opinion is required in proving that a knife is a deadly weapon, is going to depend upon a case-by-case analysis of the evidence. No hard and fast rule can be formulated.

Neither the affirmance herein nor the holding that lay testimony may be admissible on the question of whether an instrument is a deadly weapon requires the overruling of *Harris* and *Danzig.*

ROBERTS, ODOM and PHILLIPS, JJ., join in this opinion.