Pilgrim v. State 






NO. 10-89-187-CR

IN THE
COURT OF APPEALS
FOR THE
TENTH DISTRICT OF TEXAS
AT WACO

* * * * * * * * * * * * *

Â Â Â Â Â Â Â Â Â Â THOMAS RAY PILGRIM,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â Â Â Â Â Â v.

Â Â Â Â Â Â Â Â Â Â THE STATE OF TEXAS,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee

* * * * * * * * * * * * *

 From 54th Judicial District Court
McLennan County, Texas
Trial Court # 89-39-C

* * * * * * * * * * * * *

O P I N I O N

* * * * * * *
Â Â Â Â Â Â Â Â Â Â In this case the Appellant Thomas Ray Pilgrim was charged by indictment with the felony
offense of Aggravated Sexual Assault, said indictment alleging that Appellant used and exhibited
a deadly weapon in the commission of the offense. Trial was had to a jury which found Appellant
guilty and assessed his punishment at 8 years in the Texas Department of Corrections, now called
the Texas Department of Criminal Justice, Institutional Division. The jury found that Appellant
used and exhibited a deadly weapon in and during the commission of the offense. The trial court
sentenced the Appellant in accordance with the verdict, from which he appeals on one point of
error, to-wit:
Â Â Â Â Â Â Â Â Â Â There is insufficient evidence to support a conviction in that there is insufficient evidence
to prove beyond a reasonable doubt that Appellant used and exhibited a deadly weapon in the
course of the alleged criminal episode.
Â Â Â Â Â Â Â Â Â Â We respectfully overrule this point of error and affirm the trial court's judgment.
Â Â Â Â Â Â Â Â Â Â The pertinent facts are as follows: The prosecutrix was Ms. Theresa Hodge, also known
as Tracy Hodge, who was a student at Baylor University. On Saturday, September 24, 1988, the
date of the alleged offense, she had gone to Fort Fisher Park to study outdoors, and sat on a park
bench. Appellant was nearby, appearing to be working under the hood of his car. Appellant
approached Tracy, asking for help with his car, whereupon Tracy assisted by starting the car and
keeping her foot on the gas pedal. Very shortly thereafter, Appellant stepped to the driver's side
and shoved his foot over the gas pedal, pushing Tracy to the passenger's seat as he sat down in
the driver's seat. At this point it should be noted that Appellant was a man five feet, ten inches
tall, weighing 160 pounds, whereas, Tracy was five feet, three inches tall, weighing 122 pounds.
Â Â Â Â Â Â Â Â Â Â As soon as Appellant got in under the steering wheel, he closed his door and took off
driving. He told Tracy he would take her back to her car; however, he passed the turn which
would have brought him back into the Fort Fisher grounds. Ignoring Tracy's entreaties, Appellant
failed to turn at any of the other possible turnarounds. As they drove past the Baylor Marina,
Appellant took out a knife, held it in his left hand, and told Tracy she had been kidnapped. He
also told her she would not be hurt if she cooperated. At the stoplight at LaSalle and University
Parks, Tracy tried to jump out of the car, only to discover that the door handle on her side was
covered with duct tape; in other words, she was imprisoned in the car and could not get out. 
Tracy became more and more frightened; she asked Appellant, "Why are you doing this?" She
begged the Appellant to take her back to the park, and even offered him money. She testified that
she believed the Appellant would kill her. Appellant continued driving, eventually stopping in a
field out in the country. When Appellant arrived at his destination and parked his car, he asked
Tracy if he needed the knife any longer. Tracy told him that she would not do anything stupid,
whereupon the Appellant laid the knife down beside the driver's seat, with the blade still exposed. 
The knife remained in this condition and location while the Appellant assaulted Tracy.
Â Â Â Â Â Â Â Â Â Â Appellant's car was a compact hatchback type of automobile. He took off his clothes and
told her to take off hers, which she did. He laid some old clothing in the back of the car, and told
her to get back there, after which he spread her legs and had sexual intercourse with her. All of
this took place in broad daylight.
Â Â Â Â Â Â Â Â Â Â The knife in question was not offered in evidence, but was described as having only one
blade which was four inches long, with a sharp point. It was a switch-blade knife, where the blade
"popped out." Tracy testified that she believed Appellant's knife was capable of causing serious
bodily injury or death to her because of the length and type of the blade. Detective J. R. Price,
a veteran officer of the Waco Police Department and a member of the Special Crimes Unit, a man
of considerable experience where knives were concerned, testified that a knife such as the one
described as belonging to Appellant was capable of causing serious bodily injury or death.
Â Â Â Â Â Â Â Â Â Â After the assault, and while Appellant was driving Tracy back to the Fort Fisher area,
Appellant told Tracy that they were being watched by a bunch of dirty old men who were initiating
him into a cult; that the cult members had threatened his family; that she was not a random victim,
but had been selected; that the cult knew everything about her and that many of the cult members
were important people in Waco. Appellant warned Tracy not to tell anyone what had occurred. 
Later that day, Tracy described the occurrence to Officer Swanton, telling him that Appellant had
threatened her with the knife.
Â Â Â Â Â Â Â Â Â Â Appellant concedes that the knife in question was capable of causing death or serious bodily
injury; he also concedes that the knife was exhibited to Tracy, as well as used; however, he
contends that he did not use the knife in a "deadly manner."
Â Â Â Â Â Â Â Â Â Â The test we are required to follow here is to determine whether, after reviewing the
evidence in the light most favorable to the prosecution, any rational trier of fact could have found
that the Appellant used or exhibited his knife and that his knife was a deadly weapon, beyond a
reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979);
Butler v. State (Tex.Cr.App. 1989) 769 S.W.2d 234, 239. A trier of fact is entitled to draw
reasonable inferences and conclusions from the direct and circumstantial evidence. Tisdale v.
State (Tex.Cr.App. 1984) 686 S.W.2d 110, 114.
Â Â Â Â Â Â Â Â Â Â A knife is not a deadly weapon per se, but may be found to be a deadly weapon if its use
or manner of intended use during the commission of the offense renders it capable of causing death
or serious bodily injury. Sec. 1.07(a)(11)(B) of the Texas Penal Code; Davidson v. State
(Tex.Cr.App. 1980) 602 S.W.2d 272. It is not necessary that wounds be actually inflicted, or
express verbal threats be made in conjunction with the display or use of the weapon. Dominique
v. State (Tex.Cr.App. 1980) 598 S.W.2d 285; Denham v. State (Tex.Cr.App. 1978) 574 S.W.2d
129. Its characterization as a deadly weapon may flow from its physical characteristics, the
proximity of the parties, and the physical manner of its use. Denham, supra; Tisdale, supra. Also
see Babbs v. State (Houston 14th CA 1987) 739 S.W.2d 646, no pet.
Â Â Â Â Â Â Â Â Â Â In the case at bar, we are of the opinion and hold that the evidence is sufficient to prove
beyond a reasonable doubt that the Appellant used and exhibited a deadly weapon in the course
of the rape. See Patterson v. State (Tex.Cr.App. 1989) 769 S.W.2d 938.
Â Â Â Â Â Â Â Â Â Â We accordingly affirm the trial court's judgment.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â JOHN A. JAMES, JR.
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice
Before Chief Justice Thomas, Justice 
Â Â Â Â Â Â Â Â Â Â Hall and Justice James (Retired)
Affirmed
Opinion Delivered and filed February 14, 1991
Do not publish



text-align:justify;line-height:200%'>   We overrule JacksonÂs second issue.

Â Â Â Â Â  Motion for Continuance.Â  In JacksonÂs third issue, he contends that the trial court erred in overruling JacksonÂs motion for continuance.Â  See Tex.
Code Crim. Proc. Ann. art. 29.03 (Vernon 1989). ÂThe only means of
preserving error in the overruling of a motion for continuance due to an absent
witness is a motion for new trial.ÂÂ  Taylor v. State, 612 S.W.2d 566,
569 (Tex. Crim. App. [Panel Op.] 1981); accord Benoit v. State, 561
S.W.2d 810, 817 (Tex. Crim. App. 1977); see Tex. R. App. P. 21.2, 33.1(a); see generally 42 George E. Dix & Robert O. Dawson, Texas Practice: Criminal Practice and
Procedure Â§Â 28.56, at 532-33 (2d ed. 2001).Â  Jackson failed to file
a motion for new trial.Â  Jackson thus forfeited his issue.Â  We overrule JacksonÂs third issue.

Â Â Â Â Â  Having overruled JacksonÂs issues, we affirm.

TOM GRAY

Chief
Justice




Before
Chief Justice Gray,

Â Â Â Â Â  Justice
Vance, and

Â Â Â Â Â  Justice
Reyna

Â Â Â Â Â  (Justice
Vance concurring with note)*

Affirmed

Opinion
delivered and filed November 16, 2005

Do
not publish

[CRPM]

Â 

Â Â Â Â Â  *
Â(Justice Vance concurs with a note:Â  Although I find it difficult to reconcile
the analysis of JacksonÂs second issue with our decision in Moore v. State,
143 S.W.3d 305 (Tex. App.ÂWaco 2004, pet. refÂd), I concur in the judgment).Â