RICHARDS V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-453-CR

ALBERT CLINTON RICHARDS APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

A jury convicted Appellant Albert Clinton Richards of murder, and the trial court assessed his punishment and sentenced him to twenty-five years’ imprisonment.  In six points on appeal, Appellant complains that 1) the evidence is legally insufficient, 2) the evidence is factually insufficient, 3) the trial court erred by refusing to allow Appellant to confront a witness regarding the length of time of his incarceration, 4) the trial court erred by finding that a deadly weapon was used, 5) the trial court erred by determining that an aggravating factor was present, and 6) the trial court’s judgment contains an erroneous statement.  We will affirm.

Background Facts

This case involves the death of Cullen Baker
(footnote: 2), who was homeless, by Appellant, who was also homeless.  Joy Thomas and her husband, Mr. Temple, live near the intersection of Interstate 35 and Rosedale, an area where many homeless people frequent.  Mr. Temple would occasionally offer assistance to them, and they would sometimes go to his house to visit or for additional help.  On the morning of February 14, 2003, Thomas and Temple were awakened by  banging on the front door.  When they opened the door, they saw Baker, who was bleeding from wounds to his head.  He told Thomas and Temple, “Call the police.  They just jumped on me.”  The police and emergency personnel were called.  Medstar arrived and treated Baker’s wounds, but he refused to be transported to the hospital.

Officer J.R. Oakely, the Fort Worth police officer who responded to the call, took a report from Baker regarding the incident.  Based on the information obtained from Baker, Oakely began looking for Ronald Watkins and Appellant.

The following day, Roger Richards, Appellant’s brother, was driving around looking for Appellant.  Richards drove to an area where there was a large tent that he knew held church services and fed the homeless.  As he approached the large tent, he noticed a man lying inside a smaller tent.  He called out to the man, “Hey, hey, mister,” but the man did not respond.  Richards left and continued to look in other places for his brother.  Richards returned the next day to the same area where he had seen the man lying inside the small tent.  He thought something was wrong because the man was in the same spot and same position.  After checking the man’s pulse and finding that he was dead, Richards called 911.  The man in the tent was later identified as Baker.

Standard of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. 
 Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Ross v. State
, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004).  This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  The trier of fact is the sole judge of the weight and credibility of the evidence.  
See
 
Tex. Code Crim. Proc. Ann
. art. 38.04 (Vernon 1979); 
Margraves v. State
, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Thus, when performing a legal sufficiency review, we may not re- evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact finder
.  Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).  We must resolve any inconsistencies in the evidence in favor of the verdict.  
Curry v. State
, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

In contrast, when reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
. at 484.  There are two ways evidence may be factually insufficient:  (1) the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt. 
 Id
. at 484-85.  "This standard acknowledges that evidence of guilt can 'preponderate' in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt."  
Id
. at 485.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
.

In performing a factual sufficiency review, we are to give deference to the fact finder's determinations, including determinations involving the credibility and demeanor of witnesses.  
Id
. at 481; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for that of the fact finder's.  
Zuniga
, 144 S.W.3d at 482.

A proper factual sufficiency review requires an examination of all the evidence.  
Id
. at 484, 486-87.  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

Applicable Law

A person commits murder if he intentionally or knowingly causes the death of an individual, or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual, or commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.  
Tex. Penal Code Ann
. § 19.02(b) (Vernon 2003).  A person acts intentionally with respect to the result of his conduct when it is his conscious object or desire to cause the result; he acts knowingly when he is aware that his conduct is reasonably certain to cause the result. 
 Id
. §§ 6.03(a),(b).

Legal and Factual Sufficiency

In his first two points, Appellant complains that the evidence is legally and factually insufficient to sustain his conviction.  Specifically, he complains that the evidence is insufficient to show beyond a reasonable doubt that the blows administered by him caused Baker’s death.  He argues that there were numerous other individuals in the area who could have inflicted the injuries that killed Baker.  In this case, the record reveals that Appellant testified that when he first spoke to Detective S.J. Waters about Baker’s death, he denied hitting Baker.  He also testified as follows:
(footnote: 3)
 [STATE]: Let me stop you there. You picked up some rocks.

A. Uh-huh.

[STATE]: Did you . . . hit him with the rock?

A. Yes, I did.

[STATE]: How many times did you hit him with a rock?

A. I have no idea. I was scared, I was trying to get that stick away from him.

[STATE]: How many times did you hit him with a rock? How many times do you think you hit him?

A. A couple, three times.

Arthur Brown and Leo Qualls, who were also homeless men and who were with Appellant and Baker on the date of the incident, also testified that they saw Appellant hit Baker.  Brown testified that he saw Appellant pull out a “pretty good size . . . piece of asphalt” from under Appellant’s sleeping bag and hit Baker in the “head and face” between “nine and ten times.”  During his testimony, the State asked Brown what Appellant did after Baker fell to the ground.  Brown responded, “[Appellant] [w]ent on top of him, had his knees right where his chest was at.  He was working on his head with asphalt.”  The State asked Brown to clarify what “working on his head” meant, to which Brown stated, “hitting him with it.”  Brown testified that the concrete asphalt was “like a good-sized football” and was “about six inches long and about three or four inches round.”

It should be noted that Officer B.R. Patterson, a crime scene officer responding to the call regarding Baker’s body, and Detective Waters both indicated in their testimony that Baker’s initial appearance did not indicate that a homicide had occurred.  However, after an autopsy was performed, Dr. Gary Sisler, a deputy medical examiner, testified that Baker died from blunt force injury to the head.  Although he was unable to determine the time of death, he found a blood clot on the surface of Baker’s brain and gave a rough estimate that it was at least 36 hours old.  Dr. Sisler stated that on the inner layer of Baker’s scalp there were bruises on top of the head, the right frontal area, and the back right area.  Dr. Sisler admitted that many times older people fall and suffer this type of injury as a result, but he stated that he did not see any external evidence that Baker fell.

After considering the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found that Appellant intentionally or knowingly caused Baker’s death, or that Appellant intended to cause Baker serious bodily injury and committed an act clearly dangerous to human life that caused Baker’s death.  Thus, the jury could have found beyond a reasonable doubt that Appellant murdered Baker.  We hold that the evidence is legally sufficient to sustain Appellant’s conviction.  Therefore, we overrule Appellant’s first point.

Further, reviewing all the evidence in a neutral light, we conclude the jury was rationally justified in finding that when Appellant hit Baker in the head and face numerous times with a rock or piece of concrete asphalt, he caused Baker’s death.  We cannot say the evidence of guilt considered by itself is too weak to support the finding of guilt beyond a reasonable doubt, or that the contrary evidence is strong enough that the beyond-a-reasonable-doubt standard could not have been met.  
See Zuniga
, 144 S.W.3d at 481.  We hold that the evidence is factually sufficient to sustain Appellant’s conviction.  Accordingly, we overrule Appellant’s second point.

Excluded Evidence

In point three, Appellant complains that the trial court erred by not allowing him to introduce evidence regarding the amount of time Brown  actually served for a drug conviction in order to reveal any possible biases.  The State contends that Appellant has forfeited his complaint by not preserving error in the exclusion of the testimony.

To preserve error, the substance of the excluded evidence must be shown by offer of proof unless it is apparent from the context of the questions asked.  
Tex. R. Evid
. 103(a)(2); 
Chambers v. State
, 866 S.W.2d 9, 27 (Tex. Crim. App. 1993), 
cert. denied
, 511 U.S. 1100 (1994).  When, as in this case, there is no bill of exception or offer of proof to show the facts that Appellant could have proved through cross-examination of an adverse witness, the issue has not been preserved for appellate review.  
See 
Tex. R. App. P
. 33.2
; Love v. State
, 861 S.W.2d 899, 900-01 (Tex. Crim. App. 1993).  Because Appellant failed to preserve this complaint, we overrule point three.

Deadly Weapon Finding

In points four through six, Appellant argues that 1) the evidence was legally insufficient to show that the rock, or brick, or piece of concrete asphalt constituted a deadly weapon, 2) the trial court erred by determining that a deadly weapon was used without submitting the issue to the jury, and 3) the judgment contains an erroneous statement that the jury made an affirmative finding on use of a deadly weapon when the finding was actually made by the trial court.

A deadly weapon means anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.  
Tex. Penal Code Ann
. § 1.07(a)(17)(B) (Vernon Supp. 2004-05).  The plain language of section 1.07(a)(17)(B) does not require that the actor actually intend death or serious bodily injury; rather, “[t]he placement of the word ‘capable’ in the provision enables the statute to cover conduct that threatens deadly force, even if the actor has no intention of actually using deadly force.”  
Bailey v. State
, 38 S.W.3d 157, 159 (Tex. Crim. App. 2001).  Objects that are not inherently dangerous may be found to be deadly weapons under section 1.07(a)(17)(B).  
Hill v. State
, 913 S.W.2d 581, 582-83 (Tex. Crim. App. 1996).  An object qualifies as a deadly weapon if the actor intends a use of the object that would make it capable of causing death or serious bodily injury.  
Bailey
, 38 S.W.3d at 159; 
McCain v. State
, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000).  For example, while a telephone cord or a feather pillow are not normally deadly weapons, they become so if the manner of their use is to strangle or smother a victim.  
Hill
, 913 S.W.2d at 591.  The wounds inflicted and the general testimony regarding the weapon’s potential for deadliness are also factors relevant to the deadly weapon inquiry.  
Denham v. State
, 574 S.W.2d 129, 130-31 (Tex. Crim. App. 1978).

During the guilt/innocence portion of the trial, Detective Waters testified about whether any of the objects used could be a deadly weapon.  Waters testified as follows:

[STATE]: Detective Waters, as part of your experience as a police officer, have you learned the terminology of a deadly weapon?

A. Yes.

[STATE]: As part of your training and experience, have you learned what constitutes a deadly weapon?

A. Yes.

[STATE]: Let me ask you, can a rock be a deadly weapon?

A. Yes

[STATE]: Can a brick be a deadly weapon?

A. Yes.

[STATE]: Can concrete asphalt be a deadly weapon?

A. Yes.

[STATE]: Are all three of those items in the manner of their use or intended use capable of causing death or serious bodily injury?

A. Yes.

[STATE]: If a person, based on your training and experience, were to be hit in the head with one of those three items, would that constitute an act clearly dangerous to human life?

A. Yes.

Dr. Sisler testified that Baker died from blunt force injury to the head.  He also stated that a rock, brick, or some type of concrete asphalt could have been consistent with the type of injury that he observed on Baker.  By Appellant’s own admission, he hit Baker in the head and face with a piece of asphalt.  Furthermore, the State called an eyewitness who described how Appellant hit Baker with a “pretty good size” piece of asphalt in the head and face nine to ten times.  While a rock, brick, or piece of concrete asphalt normally would not be considered a deadly weapon, the evidence was legally sufficient to support that it became one when Appellant used it to strike Baker repeatedly in the head and face.  Applying the appropriate standard of review for legal sufficiency,
(footnote: 4) we hold that the evidence was sufficient to support the deadly weapon finding.  We overrule Appellant’s fourth point.

Next, we address whether the trial court erred by not submitting to the jury the special issue regarding the use of a deadly weapon and by including that finding in the judgment.  In 
Polk v. State
, the court set out three instances when, in a jury trial, the court may enter in the judgment that the jury made an affirmative finding that a defendant used or exhibited a deadly weapon during the commission of an offense: 1) When the indictment specifically alleged the words “deadly weapon” describing the weapon used and the verdict reads “guilty as charged in the indictment”; 2) When the indictment names a weapon which is per se a deadly weapon and the verdict reads “guilty as charged in the indictment”; and 3) When the special issue is submitted to the trier of fact and is answered affirmatively.  693 S.W.2d 391, 396 (Tex. Crim. App. 1985). 

In 
Polk
, the indictment did not allege that the defendant used or exhibited a “deadly weapon.”  
Id
.  
Polk
 specifically allows the trial court to enter a deadly weapon finding when the State pleads in the indictment the use or exhibition of a deadly weapon and the jury finds the defendant guilty as charged in the indictment.  
Id
.

The indictment in this case alleged that Appellant “intentionally or knowingly cause[d] the death of an individual, Cullen Baker, by hitting him with a deadly weapon, to-wit: a rock, that in the manner of its use or intended use was capable of causing death or serious bodily injury.”  The verdict in this case read, “We the Jury find the defendant guilty of the offense of murder as charged in the indictment.”  We hold that the trial court did not err.  Therefore, we overrule Appellant’s fifth and sixth points.

Conclusion

Having overruled all six points on appeal, we affirm the trial court’s judgment.

PER CURIAM

PANEL A:  HOLMAN, J.; CAYCE, C.J.; and SAM J. DAY, J. (Retired, Sitting by Assignment)

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

DELIVERED:  May 5, 2005

FOOTNOTES
1:
See
 
Tex. R. App. P
. 47.4. 

2:
The record reveals that Baker went by the nickname “Tent Man.” 

3:
Appellant testified in his own defense during the guilt/innocence portion of the trial.  He testified that he hit Baker in self-defense.

4:
See Jackson
, 443 U.S. at 307, 99 S. Ct. at 2781; 
Burden
 
v
. 
State
, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001); 
Dewberry
, 4 S.W.3d at 740.