

**NUMBER 13-07-324-CR**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

---

**DARRIN EVAN SCOTT A/K/A DARRIN WADE EVANS,**      **Appellant,**

**v.**

**THE STATE OF TEXAS,**      **Appellee.**

---

**On appeal from the 329th District Court of Wharton County, Texas.**

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Benavides
Memorandum Opinion by Justice Benavides**

Appellant, Darrin Evan Scott a/k/a Darrin Wade Evans, was convicted of the felony offense of delivery of a controlled substance. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a) (Vernon 2003); *id.* § 481.102(3)(D) (Vernon Supp. 2007). The conviction included an enhancement for delivery of a controlled substance within 1,000 feet of a school. *Id.* § 481.134(c)(1) (Vernon Supp. 2007). By three issues, Scott argues that the evidence was factually insufficient to support the conviction for the underlying offense and

the enhancement, and that the trial court erred in admitting a certificate of analysis evaluating the controlled substance. We affirm.

## I. Background

On January 6, 2006, Detective Grady Smith received a complaint of narcotics activity in the parking lot of the Caney Apartments in Wharton, Texas, and he investigated that complaint. Smith initially began his surveillance of the Caney Apartments' rear parking lot from behind a privacy fence of an adjacent property. The owner of that property invited Smith inside his home to get a "better view" from the upstairs windows.

Smith testified the weather was clear, sunny, and warm. While there are trees between the window and the parking lot, Smith also testified that in January, there was little foliage on the trees. Smith saw a Cadillac parked with the passenger door opened. From his vantage point, Smith could see inside the passenger door of the car. Ruebin Wiley was at the passenger door, apparently working on the speakers and wiring inside the car. Smith saw Scott approach the car. Smith testified he had no difficulty recognizing Scott or Wiley with the naked eye, the distance being 40-45 yards. Smith also testified he could hear the two talking.

Smith saw that Scott had something in his hands, and with his binoculars, he was able to see that Scott had a small blue digital scale. Smith then saw Scott place the scale on the passenger seat of the car. Scott placed two items—one blue and the other white—on the scale. Wiley picked up the items off the scale and handed Scott some money. Smith witnessed Wiley place the items in his right breast pocket. Smith testified that in his experience, what he had seen was consistent with drug activity.

Smith then contacted Officer Jeremy Eder, who was staged nearby, and instructed him to immediately arrest Wiley for possession. Smith told Eder where Wiley had put the

2

items he purchased from Scott. Smith kept Wiley under observation until Eder completed the arrest. Eder, upon arresting Wiley, found 0.9 grams of what appeared to be cocaine in Wiley's right breast pocket. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(b) (possession of less than one gram is a state jail felony). Scott was arrested later, was indicted for delivery of a controlled substance within 1,000 feet of a school, and was tried before a jury.

At trial, Wiley testified that on January 6, he "bought some drugs" from Scott. He stated that he bought about $30 worth of cocaine and that, at that time, he thought it weighed .9 ounces. Wiley identified State's Exhibit 3, the baggies of cocaine seized from him when he was arrested, as the items he had purchased from Scott. Wiley also testified that once he received the drugs, he placed them in his jacket pocket, corresponding to where Smith saw him place the items and where Eder found them when he arrested Wiley.

The evidence seized from Wiley was tested at the Wharton Police Department and also at the Texas Department of Public Safety Laboratory in Houston. Both tests confirmed the substance contained cocaine. At trial, the State sought to admit a certificate of analysis from the D.P.S. Crime Laboratory, certifying the test results. Defense counsel objected on the grounds that admitting the certificate denied Scott his right to confront and cross-examine the chemist who conducted the tests. *See* U.S. CONST. amend. VI. The State responded that it had complied with article 38.41 of the Texas Code of Criminal Procedure by filing the certificate timely and by faxing a copy to defense counsel, and it provided the court with a fax report showing the certificate had been faxed to Scott's attorney. *See* TEX. CODE CRIM. PROC. ANN. art. 38.41 (Vernon 2005). Defense counsel reiterated his objections on Sixth Amendment grounds, "in spite of their filing it and giving [him] a fax." The trial court, however, overruled Scott's objection and admitted the

3

certificate.

Smith testified at trial that he estimated the distance from the location where the drug buy took place to Hopper Elementary School to be well within 1,000 feet. He also testified that when he measured the distance to confirm his estimate, he used a laser range finder, and the distance measured was less than 700 feet, going around some obstacles.

Scott was convicted of delivery of a controlled substance in a drug-free Zone, or within 1,000 feet of a school. TEX. HEALTH & SAFETY CODE ANN. § 481.134(c)(1). He was sentenced to fifteen years in the Texas Department of Criminal Justice-Institutional Division.

## II. Discussion

Scott raises three issues for our review. By his third issue, Scott argues that the trial court erred by admitting the certificate of analysis. By his first issue, he argues that the evidence presented at trial was factually insufficient to support his conviction for delivery of a controlled substance. By his second issue, he argues that the evidence presented at trial was factually insufficient to support the enhancement for delivery of a controlled substance in a drug-free zone.

A.    **Certificate of Analysis**

Scott argues that the trial court erred in admitting the Certificate of Analysis from the Texas D.P.S. Crime Laboratory because (1) there is no "competent evidence" that the report was delivered to defense counsel in a timely manner, *see* TEX. CODE CRIM. PROC. ANN. art. 38.41 § 4 (Vernon 2005); and (2) admitting the report denied him of his rights under the Sixth Amendment to the United States Constitution and article 1.05 of the Texas Code of Criminal Procedure to cross-examine the chemist who performed the analysis.

4

*See* U.S. CONST. amend. VI; TEX. CODE CRIM. PROC. ANN. art. 1.05 (Vernon 2005).

First, Scott argues that there is "no evidence" that he received timely notice of the certificate of analysis, thus precluding him from timely objecting to the use of the certificate at trial. Texas Code of Criminal Procedure article 38.41, section four, provides:

> Not later than the 20th day before the trial begins in a proceeding in which a certificate of analysis under this article is to be introduced, the certificate must be filed with the clerk of the court and a copy must be provided by fax, hand delivery, or certified mail, return receipt requested, to the opposing party. The certificate is not admissible under Section 1 if, not later than the 10th day before the trial begins, the opposing party files a written objection to the use of the certificate with the clerk of the court and provides a copy of the objection by fax, hand delivery, or certified mail, return receipt requested, to the offering party.

TEX. CODE CRIM. PROC. ANN. art. 38.41 § 4. Initially, we must address whether this alleged error has been preserved for our review.

The record contains an objection to the admissibility of the report. However, the sole articulated basis for the objection made at trial was that the court was denying Scott the opportunity to cross-examine the chemist who performed the analysis. Scott did not object to the admissibility of the certificate based on the lack of "competent evidence of delivery" of the certificate at trial. It is well settled that the appellant's issue on appeal must comport with the objection made at trial. *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995). Scott failed to preserve his argument regarding the timely delivery of the certificate by failing to make an objection at trial. *Id.*

Scott did, however, object that admitting the certificate denied him the right to confront the chemist who analyzed the alleged cocaine. The Sixth Amendment to the United States Constitution provides that ""[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The Sixth Amendment "bars the admission of testimonial statements of a witness who

5

does not appear at trial unless the witness is unavailable to testify and the defendant had a prior opportunity to cross-examine him." *Deener v. State*, 214 S.W.3d 522, 525 (Tex. App.–Dallas 2006, pet. ref'd) (citing *Crawford v. Washington*, 541 U.S. 36, 59 (2004)).

While Scott may be correct that the certificate is testimonial in nature, requiring that the chemist's analysis be tested by cross-examination, *see Deener*, 214 S.W.3d at 526, his objection was untimely and waived his right to require the State to produce the chemist at trial. Article 38.41, section one provides:

> A certificate of analysis that complies with [article 38.41] is admissible in evidence on behalf of the state or the defendant to establish the results of a laboratory analysis of physical evidence conducted by or for a law enforcement agency without the necessity of the analyst personally appearing in court.

TEX. CODE CRIM. PROC. ANN. art. 38.41 § 1. Section two further provides, "This article does not limit the right of a party to summon a witness or to introduce admissible evidence relevant to the results of the analysis." *Id.* art. 38.41 § 2. In order to require the State to produce the chemist at trial to testify, section four imposes a requirement that the defendant file a written objection to the use of the certificate "not later than the 10th day before the trial begins." *Id.* art. 38.41 § 4. Scott did not object to the admissibility of the certificate until the day of trial, which is too late. *Id.* Nor did he subpoena the chemist himself, as was his prerogative under the statute. *Id.* art. 38.41 § 2.

Texas courts have held that there are three categories of rights: (1) systemic (or absolute) requirements, (2) waivable-only rights, and (3) forfeitable rights. *Mendez v. State*, 138 S.W.3d 334, 340-41 (Tex. Crim. App. 2004); *Marin v. State*, 851 S.W.2d 275, 278-79 (Tex. Crim. App. 1993). Most rights fall into the third category. *See Deener*, 214 S.W.3d at 527. Forfeitable rights are "typical evidentiary and procedural rules that are implemented only when requested." *Id.* These rights must be preserved by a timely and

6

specific objection in the trial court. *Id.* (citing *Mendez*, 138 S.W.3d at 341-42). Even constitutional rights may be forfeited if not timely asserted by the defendant. *Id.* The right to confront witnesses is such a right. *Id.* There is nothing in *Crawford* that indicates otherwise. *Id.*

It is apparent from the record that the State's report was timely filed, and the State tendered a receipt indicating the certificate of analysis had been successfully faxed to defense counsel. Scott, upon receipt of the fax, had the opportunity to object to the certificate of analysis in writing—thus preserving his right to confront and cross-examine the chemist—but he did not. By failing to object timely or subpoena the witness himself, Scott forfeited his right to confront and cross-examine the analyst. *Id.* Accordingly, we overrule Scott's third issue.

## B. Factual Sufficiency of the Evidence

Scott argues that the evidence presented at trial was factually insufficient to support his conviction for delivery of a controlled substance and to support the enhancement for committing the offense in a drug-free zone. Three basic rules guide our inquiry when conducting a factual-sufficiency analysis. *Lancon v. State*, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008). "First, the court of appeals must be cognizant of the fact that a jury has already passed on the facts and must give due deference to the determinations of the jury." *Id.* at 705. While we may not agree with the jury's decision, we must "afford the appropriate deference in order to avoid substituting [our] judgment for that of the jury." *Id.* Second, if we determine that the evidence is factually insufficient, we must explain precisely why. *Id.* Third, we must "review all of the evidence in a neutral light, as opposed to a legal-sufficiency review in which the evidence is viewed in the light most favorable to the verdict." *Id.* We will reverse for factual insufficiency of the evidence if "the evidence

7

supporting the verdict, though legally sufficient, is nonetheless too weak to support it" or if, "when considering conflicting evidence, the jury's verdict is against the great weight and preponderance of the evidence." *Id.*

### 1.    Delivery of a Controlled Substance

First, Scott argues that we should not consider Wiley's testimony. He argues that the testimony is unreliable because: (1) Wiley was mistaken about some of the details of the day; (2) Wiley has a pending charge of possession of a controlled substance, as well as a pending bond forfeiture; (3) Wiley would say anything the State wanted him to in order to benefit himself; and (4) Wiley admitted using marihuana and beer on the day of his arrest.

With respect to the pending charges against Wiley for drug possession, which arise from the events leading up to Scott's arrest, Scott appears to be making an accomplice witness argument. He does not explicitly argue, however, that without Wiley's testimony, there is insufficient corroborative evidence to connect Scott to the crime. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2005). Nevertheless, we find there is sufficient evidence to connect Scott to the crime.

Upon review of the record, Wiley's testimony regarding the drug buy is corroborated by the testimony of police officers Smith and Whitlock, as well as the certificate of analysis. This Court has held that "while the accused's mere presence in the company of the accomplice or informant before, during, and after the commission of the offense is insufficient by itself to corroborate accomplice testimony, evidence of such presence, coupled with other suspicious circumstances, may tend to connect the accused to the offense." *McAfee v. State*, 204 S.W.3d 868, 871 (Tex. App.–Corpus Christi 2006, pet. ref'd) (en banc); *see also Adams v. State*, 180 S.W.3d 386, 415 (Tex. App.–Corpus Christi

8

2005, no pet.).

The record contains evidence, other than Wiley's accomplice testimony, that the officers had received information that drug activity was taking place at the location in question. The actions of Scott and Wiley, as observed by Smith, were consistent with drug activity, including Scott's use of a scale to weigh a small white package and Wiley giving Scott money in exchange for that small white package.

Scott argues that Officer Smith was "some distance away," and by implication, "too far away," to see what was actually transpiring. However, Officer Smith estimated that the distance between his viewing position and the events he witnessed was only 45 yards. Furthermore, he used binoculars to view the events, which provided a more detailed view. Smith also stated he was close enough to hear the conversation between Scott and Wiley. Finally, photographs admitted into evidence show that the distance from the window to the car is not great. State's Exhibit 2, a photo taken from inside the room where Smith was observing, shows that a considerable amount of detail is visible at this distance, including many of the characteristics of the car in the picture. The car in the photo is parked at the approximate location where Smith observed Wiley and Scott.

It is well established that lay witnesses are competent to estimate distances, and there was no objection to Smith's testimony regarding the distance from which he viewed the events. *Denham v. State*, 574 S.W.2d 129, 131 (Tex. Crim. App. 1978); *Kipper v. State*, 77 S.W. 611, 614 (Tex. Crim. App. 1903). Scott offered no testimony or evidence regarding the distance from which Smith had observed the drug buy. There was some discussion at trial about the foliage on the trees possibly obstructing Smith's view; Smith, however, testified that in January, there was virtually no foliage on the trees at all.

9

The officer's eyewitness testimony regarding the proximity of Scott to Wiley, the digital scale in the car, the exchange of money, and the testimony that Wiley did not have any items in his pockets other than the drugs corroborate Wiley's testimony that he purchased drugs from Scott. Smith's testimony regarding the proximity of him to these events lends credibility to his evaluation of the activity as a drug buy. We recognize that any of these circumstances individually might not be sufficient to corroborate Wiley's testimony. *See Jefferson v. State*, 99 S.W.3d 790, 792 (Tex. App.–Eastland 2003, pet. ref'd). Considering the circumstances together, however, a rational fact finder could conclude that the cumulative effect of all the testimony sufficiently tended to connect Scott to the offense. *See id.* Wiley's testimony, therefore, can be properly considered as evidence of Scott's guilt. *See Adams*, 180 S.W.3d at 415.

Nevertheless, Scott challenges Wiley's credibility and motivation for testifying against him. Scott explored Wiley's credibility on cross-examination; thus, the jury was made aware of Wiley's potential credibility problems. Defense counsel inquired about Wiley failing to show up for court in his possession case stemming from the events leading to the instant case. Defense counsel further asked Wiley about a prior conviction for aggravated assault with a deadly weapon.

Defense counsel impeached Wiley's testimony that he did not know what the drugs weighed using his written statement, in which Wiley stated the drugs weighed .9 ounces. Counsel also questioned Wiley about (1) his use of alcohol and marihuana earlier that day, before meeting with Scott; and (2) inconsistencies with his testimony regarding whether the two baggies of drugs were in his breast pocket, or if one was in his pants pocket. Finally, Scott's counsel questioned Officer Smith and Wiley about presence of other people at the location during the transaction, arguing the possibility that Wiley purchased drugs from

10

another person in the parking lot.

While there is some evidence raising questions about Wiley's credibility, the reliability of Officer Smith's perceptions, and the presence of third parties during the transaction, we cannot conclude that the State's proof of Scott's guilt is so obviously weak as to undermine confidence in the fact finder's determination. *See Lancon,* 253 S.W.3d at 705; *see also Zuliani v. State*, 97 S.W.3d 589, 593 (Tex. Crim. App. 2003). As the trier of fact, the jury is the judge of the credibility of the witnesses and of the weight to be given the witnesses' testimony. *Lancon,* 253 S.W.3d at 705-06. Even though Wiley may have been a discredited witness with selfish interests, the jury was entitled to find that he was telling the truth and that other evidence corroborated his testimony. *Id.* The jury chose to resolve the evidence in favor of the prosecution. We defer to that resolution. *Id.* Viewing the evidence neutrally, we hold the evidence was factually sufficient to support the conviction. We overrule Scott's first issue.

### 2.	Drug-Free Zone Enhancement

By his second issue, Scott argues that Smith's testimony regarding the distance from the school to the location of the drug buy is factually insufficient to find Scott guilty of Delivery of a Controlled Substance within 1,000 feet of a school. Scott suggests the evidence is insufficient because the State (1) offered no evidence regarding how Smith came up with the estimated distance, (2) offered no evidence to prove the measuring device used to confirm Smith's estimate of the distance was used properly, and (3) offered no evidence regarding the model, working condition or functionality of the device.

If it is shown that an accused possessed cocaine in an amount less than 1 gram, and that the accused possessed the cocaine "in, on, or within 1,000 feet of premises of a school or a public or private youth center," the crime is a felony of the third degree. TEX.

11

HEALTH & SAFETY CODE ANN. § 481.134(d)(1). In this case, the jury made a special finding that Scott's offense occurred in a drug-free zone.

At trial, Smith testified that the location of the drug buy—525 East Caney in Wharton, Texas—fell within 1,000 feet of Hopper Elementary School, located at 500 Able Street in Wharton, Texas. Scott did not object to Smith's testimony, nor did he present evidence to controvert Smith's testimony. The drug-free zone statute does not require the State to specifically present a particular kind of evidence or to submit complex metes and bounds declarations of nearby properties to satisfy its burden of proof on the drug-free zone element. *Id.* While Texas Health and Safety Code section 481.135 provides that county or municipal maps are prima facie evidence of the location of a drug-free zone, maps are not required—section 481.135 expressly authorizes the State to introduce or rely on "any other evidence or testimony to establish any element of an offense for which punishment is increased under Section 481.134." *Id.* § 481.135(d) (Vernon 2003). An officer's testimony, based on personal knowledge, that the offense occurred in a drug-free zone is sufficient to support a finding on the enhancement. *Young v. State*, 14 S.W.3d 748, 754 (Tex. Crim. App. 2000) (relying on officer's testimony as to location of drug-free zone and offense, which was based on personal knowledge); *see also Curry v. State*, No. 10-07-00104-CR, 2008 WL 43647, at *3 (Tex. App.–Waco Jan. 2, 2008, no pet.) (mem. op., not designated for publication).

It is well settled that in Texas, the opinions of lay witnesses, when competent, are admissible concerning estimates of age, size, weight, quantity, time, distance and speed of persons and things. *Denham*, 574 S.W.2d at 131; *Kipper*, 77 S.W. at 614; *see also Blake v. State*, No. 06-03-00085-CR, 2004 WL 963323, at *5 (Tex. App.–Texarkana 2004, pet. ref'd) (mem. op, not designated for publication) (holding officer's testimony regarding

12

location of drug buy and drug-free zone was sufficient to sustain conviction).  In the instant case, Smith's opinion that the estimated distance from the school property to the site of the drug buy was within 1,000 feet, and his subsequent measurement of that distance, was sufficient to support the conviction.  We hold that the evidence is not so weak as to render the verdict unjust, nor is the jury's verdict against the great weight and preponderance of the evidence.  *See Lancon*, 253 S.W.3d at 704.

## III.  Conclusion

Having overruled all three of Scott's issues, we AFFIRM.

_____
GINA M. BENAVIDES
Justice

Do not publish.
*See* TEX. R. APP. P. 47.2(b)

Memorandum Opinion delivered and
filed this the 14th day of August, 2008.

13