COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-453-CR
 
  
ALBERT 
CLINTON RICHARDS                                                  APPELLANT
 
V.
  
THE 
STATE OF TEXAS                                                                  STATE
 
 
------------
 
FROM 
THE 213TH DISTRICT COURT OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        A 
jury convicted Appellant Albert Clinton Richards of murder, and the trial court 
assessed his punishment and sentenced him to twenty-five years’ imprisonment. 
In six points on appeal, Appellant complains that 1) the evidence is legally 
insufficient, 2) the evidence is factually insufficient, 3) the trial court 
erred by refusing to allow Appellant to confront a witness regarding the length 
of time of his incarceration, 4) the trial court erred by finding that a deadly 
weapon was used, 5) the trial court erred by determining that an aggravating 
factor was present, and 6) the trial court’s judgment contains an erroneous 
statement. We will affirm.
Background 
Facts
        This 
case involves the death of Cullen Baker[2], who was 
homeless, by Appellant, who was also homeless. Joy Thomas and her husband, Mr. 
Temple, live near the intersection of Interstate 35 and Rosedale, an area where 
many homeless people frequent. Mr. Temple would occasionally offer assistance to 
them, and they would sometimes go to his house to visit or for additional help. 
On the morning of February 14, 2003, Thomas and Temple were awakened by banging 
on the front door. When they opened the door, they saw Baker, who was bleeding 
from wounds to his head. He told Thomas and Temple, “Call the police. They 
just jumped on me.” The police and emergency personnel were called. Medstar 
arrived and treated Baker’s wounds, but he refused to be transported to the 
hospital.
        Officer 
J.R. Oakely, the Fort Worth police officer who responded to the call, took a 
report from Baker regarding the incident. Based on the information obtained from 
Baker, Oakely began looking for Ronald Watkins and Appellant.
        The 
following day, Roger Richards, Appellant’s brother, was driving around looking 
for Appellant. Richards drove to an area where there was a large tent that he 
knew held church services and fed the homeless. As he approached the large tent, 
he noticed a man lying inside a smaller tent. He called out to the man, “Hey, 
hey, mister,” but the man did not respond. Richards left and continued to look 
in other places for his brother. Richards returned the next day to the same area 
where he had seen the man lying inside the small tent. He thought something was 
wrong because the man was in the same spot and same position. After checking the 
man’s pulse and finding that he was dead, Richards called 911. The man in the 
tent was later identified as Baker.
Standard of 
Review
        In 
reviewing the legal sufficiency of the evidence to support a conviction, we view 
all the evidence in the light most favorable to the verdict in order to 
determine whether any rational trier of fact could have found the essential 
elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 
U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Ross v. State, 133 S.W.3d 
618, 620 (Tex. Crim. App. 2004). This standard gives full play to the 
responsibility of the trier of fact to resolve conflicts in the testimony, to 
weigh the evidence, and to draw reasonable inferences from basic facts to 
ultimate facts. Jackson, 443 U.S. at 319, 99 S. Ct. at 2789. The trier of 
fact is the sole judge of the weight and credibility of the evidence. See 
Tex. Code Crim. Proc. Ann. art. 
38.04 (Vernon 1979); Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. 
App. 2000). Thus, when performing a legal sufficiency review, we may not re- 
evaluate the weight and credibility of the evidence and substitute our judgment 
for that of the fact finder. Dewberry v. State, 4 S.W.3d 735, 740 (Tex. 
Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000). We must resolve any 
inconsistencies in the evidence in favor of the verdict. Curry v. State, 
30 S.W.3d 394, 406 (Tex. Crim. App. 2000).
        In 
contrast, when reviewing the factual sufficiency of the evidence to support a 
conviction, we are to view all the evidence in a neutral light, favoring neither 
party. See Zuniga v. State, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004). 
The only question to be answered in a factual sufficiency review is whether, 
considering the evidence in a neutral light, the fact finder was rationally 
justified in finding guilt beyond a reasonable doubt. Id. at 484. There 
are two ways evidence may be factually insufficient: (1) the evidence supporting 
the verdict or judgment, considered by itself, is too weak to support the 
finding of guilt beyond a reasonable doubt; or (2) when there is evidence both 
supporting and contradicting the verdict or judgment, weighing all of the 
evidence, the contrary evidence is so strong that guilt cannot be proven beyond 
a reasonable doubt. Id. at 484-85. "This standard acknowledges that 
evidence of guilt can 'preponderate' in favor of conviction but still be 
insufficient to prove the elements of the crime beyond a reasonable doubt." 
Id. at 485. In other words, evidence supporting a guilty finding can 
outweigh the contrary proof but still be insufficient to prove the elements of 
an offense beyond a reasonable doubt. Id.
        In 
performing a factual sufficiency review, we are to give deference to the fact 
finder's determinations, including determinations involving the credibility and 
demeanor of witnesses. Id. at 481; Cain v. State, 958 S.W.2d 404, 
407 (Tex. Crim. App. 1997). We may not substitute our judgment for that of the 
fact finder's. Zuniga, 144 S.W.3d at 482.
        A 
proper factual sufficiency review requires an examination of all the evidence. Id. 
at 484, 486-87. An opinion addressing factual sufficiency must include a 
discussion of the most important and relevant evidence that supports the 
appellant's complaint on appeal. Sims v. State, 99 S.W.3d 600, 603 (Tex. 
Crim. App. 2003).
Applicable Law
        A 
person commits murder if he intentionally or knowingly causes the death of an 
individual, or intends to cause serious bodily injury and commits an act clearly 
dangerous to human life that causes the death of an individual, or commits or 
attempts to commit a felony, other than manslaughter, and in the course of and 
in furtherance of the commission or attempt, or in immediate flight from the 
commission or attempt, he commits or attempts to commit an act clearly dangerous 
to human life that causes the death of an individual. Tex. Penal Code Ann. § 19.02(b) (Vernon 
2003). A person acts intentionally with respect to the result of his conduct 
when it is his conscious object or desire to cause the result; he acts knowingly 
when he is aware that his conduct is reasonably certain to cause the result. Id. 
§§ 6.03(a),(b).
Legal and 
Factual Sufficiency
        In 
his first two points, Appellant complains that the evidence is legally and 
factually insufficient to sustain his conviction. Specifically, he complains 
that the evidence is insufficient to show beyond a reasonable doubt that the 
blows administered by him caused Baker’s death. He argues that there were 
numerous other individuals in the area who could have inflicted the injuries 
that killed Baker. In this case, the record reveals that Appellant testified 
that when he first spoke to Detective S.J. Waters about Baker’s death, he 
denied hitting Baker. He also testified as follows:[3]
    
        [STATE]:    Let 
me stop you there. You picked up some rocks.
 
        A.             Uh-huh.
 
        [STATE]:    Did 
you . . . hit him with the rock?
 
        A.             Yes, 
I did.
 
        [STATE]:    How 
many times did you hit him with a rock?
 
        A.             I 
have no idea. I was scared, I was trying to get that stick away from him.
 
        [STATE]:    How 
many times did you hit him with a rock? How many times do you think you hit him?
 
        A.             A 
couple, three times.
  
        Arthur 
Brown and Leo Qualls, who were also homeless men and who were with Appellant and 
Baker on the date of the incident, also testified that they saw Appellant hit 
Baker. Brown testified that he saw Appellant pull out a “pretty good size . . 
. piece of asphalt” from under Appellant’s sleeping bag and hit Baker in the 
“head and face” between “nine and ten times.” During his testimony, the 
State asked Brown what Appellant did after Baker fell to the ground. Brown 
responded, “[Appellant] [w]ent on top of him, had his knees right where his 
chest was at. He was working on his head with asphalt.” The State asked Brown 
to clarify what “working on his head” meant, to which Brown stated, 
“hitting him with it.” Brown testified that the concrete asphalt was “like 
a good-sized football” and was “about six inches long and about three or 
four inches round.”
        It 
should be noted that Officer B.R. Patterson, a crime scene officer responding to 
the call regarding Baker’s body, and Detective Waters both indicated in their 
testimony that Baker’s initial appearance did not indicate that a homicide had 
occurred. However, after an autopsy was performed, Dr. Gary Sisler, a deputy 
medical examiner, testified that Baker died from blunt force injury to the head. 
Although he was unable to determine the time of death, he found a blood clot on 
the surface of Baker’s brain and gave a rough estimate that it was at least 36 
hours old. Dr. Sisler stated that on the inner layer of Baker’s scalp there 
were bruises on top of the head, the right frontal area, and the back right 
area. Dr. Sisler admitted that many times older people fall and suffer this type 
of injury as a result, but he stated that he did not see any external evidence 
that Baker fell.
        After 
considering the evidence in the light most favorable to the verdict, we conclude 
that a rational trier of fact could have found that Appellant intentionally or 
knowingly caused Baker’s death, or that Appellant intended to cause Baker 
serious bodily injury and committed an act clearly dangerous to human life that 
caused Baker’s death. Thus, the jury could have found beyond a reasonable 
doubt that Appellant murdered Baker. We hold that the evidence is legally 
sufficient to sustain Appellant’s conviction. Therefore, we overrule 
Appellant’s first point.
        Further, 
reviewing all the evidence in a neutral light, we conclude the jury was 
rationally justified in finding that when Appellant hit Baker in the head and 
face numerous times with a rock or piece of concrete asphalt, he caused 
Baker’s death. We cannot say the evidence of guilt considered by itself is too 
weak to support the finding of guilt beyond a reasonable doubt, or that the 
contrary evidence is strong enough that the beyond-a-reasonable-doubt standard 
could not have been met. See Zuniga, 144 S.W.3d at 481. We hold that the 
evidence is factually sufficient to sustain Appellant’s conviction. 
Accordingly, we overrule Appellant’s second point.
Excluded 
Evidence
        In 
point three, Appellant complains that the trial court erred by not allowing him 
to introduce evidence regarding the amount of time Brown actually served for a 
drug conviction in order to reveal any possible biases. The State contends that 
Appellant has forfeited his complaint by not preserving error in the exclusion 
of the testimony.
        To 
preserve error, the substance of the excluded evidence must be shown by offer of 
proof unless it is apparent from the context of the questions asked. Tex. R. Evid. 103(a)(2); Chambers v. 
State, 866 S.W.2d 9, 27 (Tex. Crim. App. 1993), cert. denied, 511 
U.S. 1100 (1994). When, as in this case, there is no bill of exception or offer 
of proof to show the facts that Appellant could have proved through 
cross-examination of an adverse witness, the issue has not been preserved for 
appellate review. See Tex. R. App. 
P. 33.2; Love v. State, 861 S.W.2d 899, 900-01 (Tex. Crim. App. 
1993). Because Appellant failed to preserve this complaint, we overrule point 
three.
Deadly Weapon 
Finding
        In 
points four through six, Appellant argues that 1) the evidence was legally 
insufficient to show that the rock, or brick, or piece of concrete asphalt 
constituted a deadly weapon, 2) the trial court erred by determining that a 
deadly weapon was used without submitting the issue to the jury, and 3) the 
judgment contains an erroneous statement that the jury made an affirmative 
finding on use of a deadly weapon when the finding was actually made by the 
trial court.
        A 
deadly weapon means anything that in the manner of its use or intended use is 
capable of causing death or serious bodily injury. Tex. Penal Code Ann. § 1.07(a)(17)(B) 
(Vernon Supp. 2004-05). The plain language of section 1.07(a)(17)(B) does not 
require that the actor actually intend death or serious bodily injury; rather, 
“[t]he placement of the word ‘capable’ in the provision enables the 
statute to cover conduct that threatens deadly force, even if the actor has no 
intention of actually using deadly force.” Bailey v. State, 38 S.W.3d 
157, 159 (Tex. Crim. App. 2001). Objects that are not inherently dangerous may 
be found to be deadly weapons under section 1.07(a)(17)(B). Hill v. State, 
913 S.W.2d 581, 582-83 (Tex. Crim. App. 1996). An object qualifies as a deadly 
weapon if the actor intends a use of the object that would make it capable of 
causing death or serious bodily injury. Bailey, 38 S.W.3d at 159; McCain 
v. State, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). For example, while a 
telephone cord or a feather pillow are not normally deadly weapons, they become 
so if the manner of their use is to strangle or smother a victim. Hill, 
913 S.W.2d at 591. The wounds inflicted and the general testimony regarding the 
weapon’s potential for deadliness are also factors relevant to the deadly 
weapon inquiry. Denham v. State, 574 S.W.2d 129, 130-31 (Tex. Crim. App. 
1978).
        During 
the guilt/innocence portion of the trial, Detective Waters testified about 
whether any of the objects used could be a deadly weapon. Waters testified as 
follows:
   
        [STATE]:    Detective 
Waters, as part of your experience as a police officer, have you learned the 
terminology of a deadly weapon?
 
        A.             Yes.
 
        [STATE]:    As 
part of your training and experience, have you learned what constitutes a deadly 
weapon?
 
        A.             Yes.
 
        [STATE]:    Let 
me ask you, can a rock be a deadly weapon?
 
        A.             Yes
 
        [STATE]:    Can 
a brick be a deadly weapon?
 
        A.             Yes.
 
        [STATE]:    Can 
concrete asphalt be a deadly weapon?
 
        A.             Yes.
 
        [STATE]:    Are 
all three of those items in the manner of their use or intended use capable of 
causing death or serious bodily injury?
 
        A.             Yes.
 
        [STATE]:    If 
a person, based on your training and experience, were to be hit in the head with 
one of those three items, would that constitute an act clearly dangerous to 
human life?
 
        A.             Yes.
   
        Dr. 
Sisler testified that Baker died from blunt force injury to the head. He also 
stated that a rock, brick, or some type of concrete asphalt could have been 
consistent with the type of injury that he observed on Baker. By Appellant’s 
own admission, he hit Baker in the head and face with a piece of asphalt. 
Furthermore, the State called an eyewitness who described how Appellant hit 
Baker with a “pretty good size” piece of asphalt in the head and face nine 
to ten times. While a rock, brick, or piece of concrete asphalt normally would 
not be considered a deadly weapon, the evidence was legally sufficient to 
support that it became one when Appellant used it to strike Baker repeatedly in 
the head and face. Applying the appropriate standard of review for legal 
sufficiency,[4] we hold that the evidence was 
sufficient to support the deadly weapon finding. We overrule Appellant’s 
fourth point.
        Next, 
we address whether the trial court erred by not submitting to the jury the 
special issue regarding the use of a deadly weapon and by including that finding 
in the judgment. In Polk v. State, the court set out three instances 
when, in a jury trial, the court may enter in the judgment that the jury made an 
affirmative finding that a defendant used or exhibited a deadly weapon during 
the commission of an offense: 1) When the indictment specifically alleged the 
words “deadly weapon” describing the weapon used and the verdict reads 
“guilty as charged in the indictment”; 2) When the indictment names a weapon 
which is per se a deadly weapon and the verdict reads “guilty as charged in 
the indictment”; and 3) When the special issue is submitted to the trier of 
fact and is answered affirmatively. 693 S.W.2d 391, 396 (Tex. Crim. App. 1985).
        In 
Polk, the indictment did not allege that the defendant used or exhibited 
a “deadly weapon.” Id. Polk specifically allows the trial 
court to enter a deadly weapon finding when the State pleads in the indictment 
the use or exhibition of a deadly weapon and the jury finds the defendant guilty 
as charged in the indictment. Id.
        The 
indictment in this case alleged that Appellant “intentionally or knowingly 
cause[d] the death of an individual, Cullen Baker, by hitting him with a deadly 
weapon, to-wit: a rock, that in the manner of its use or intended use was 
capable of causing death or serious bodily injury.” The verdict in this case 
read, “We the Jury find the defendant guilty of the offense of murder as 
charged in the indictment.” We hold that the trial court did not err. 
Therefore, we overrule Appellant’s fifth and sixth points.
Conclusion
        Having 
overruled all six points on appeal, we affirm the trial court’s judgment.
    
                                                                  PER 
CURIAM
 
 
 
PANEL 
A: HOLMAN, J.; CAYCE, C.J.; and SAM J. DAY, J. (Retired, Sitting by Assignment)
 
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
May 5, 2005


NOTES
1. 
See Tex. R. App. P. 47.4.
2. 
The record reveals that Baker went by the nickname “Tent Man.”
3. 
Appellant testified in his own defense during the guilt/innocence portion of the 
trial. He testified that he hit Baker in self-defense.
4. 
See Jackson, 443 U.S. at 307, 99 S. Ct. at 2781; Burden v. State, 
55 S.W.3d 608, 612 (Tex. Crim. App. 2001); Dewberry, 4 S.W.3d at 740.