In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-14-00365-CR
NO. 09-14-00366-CR

_____

**JERRY LEE MYERS JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 128th District Court**
**Orange County, Texas**
**Trial Cause Nos. A-130725-R & A-090038-R**

**MEMORANDUM OPINION**

In Cause No. A-090038-R, Appellant Jerry Lee Myers Jr. (Myers) was indicted for and pleaded guilty on August 14, 2009, to aggravated assault. Myers was placed on deferred adjudication community supervision for eight years, assessed a $2,000 fine, and ordered to pay $1,795.51 in restitution. In November of 2013, while Myers was serving his community supervision for the earlier assault,

1

Myers was indicted for the aggravated assault of A.W.[1], an adult male, in Cause No. A-130725-R. The State also filed a Motion to Impose Guilt in Cause No. A-090038-R.

In Cause No. A-130725-R, Myers waived his right to a jury trial, and he pleaded "not guilty" to the offense. Following a bench trial, the trial court found Myers guilty of aggravated assault in Cause No. A-130725-R. The trial court also found Myers guilty in Cause No. A-090038-R and revoked his probation. The trial court sentenced Myers to seven years of confinement in each case, with the sentences to run concurrently.

In appealing both convictions, Myers contends in a single issue that he received ineffective assistance of counsel because his counsel did not object to (1) admission of evidence of statements by a non-testifying witness identifying Myers as the perpetrator and (2) testimony by police officers regarding what caused the victim's injuries and whether the injuries were caused by a deadly weapon. We overrule his issue and affirm.

## FACTUAL BACKGROUND

Officer Troy Tyson with the City of Orange Police Department testified that he was on patrol on the morning of September 1, 2013, when he received a call

---

[1]We refer to the victim by his initials.

from dispatch about an assault that occurred at a store in Orange County, Texas. According to Officer Tyson, when he arrived at the store he observed the alleged victim, A. W., sitting on the curb in front of the store. A.W. had a laceration to his head. Officer Tyson testified that the laceration was "probably about 10 inches long and about an inch deep[.]" Officer Tyson testified that A.W. described the assailant as someone he knew as "Smiley." A.W. told the officer that the assailant left the scene in a white Avalanche. The patrol video of Officer Tyson's interview with A.W. was introduced into evidence. A.W. did not testify at the trial.

Officer Tyson obtained a statement from the store clerk who witnessed the assault and who knew both the victim and assailant, and a statement from A.W. No other witnesses were at the store when Officer Tyson arrived. According to Officer Tyson, the store clerk reported that Myers used a knife in the assault. In Officer Tyson's opinion, the manner of use or intended use of the knife by Myers was capable of causing death or serious bodily injury, and A.W. suffered bodily injury as a result of being stabbed in the head with the knife.

Detective Sergeant Jason Ashworth with the City of Orange Police Department testified that he conducted an investigation of the assault of A.W. Ashworth obtained and reviewed the surveillance video from the store. The surveillance video was played at trial. Ashworth explained that over approximately

3

a three week period he gave Myers an opportunity to give a statement, but Myers did not give a statement. Ashworth reviewed the video surveillance and testified that the video depicts A.W. pulling up to the store and being attacked even though "it seemed like there was no provocation for it." Sergeant Ashworth testified that, based on his review of the surveillance video, it appeared that the attacker made a motion that was consistent with the use of a knife, that it appeared to be a knowing and intentional act, and that the instrument used was, in the manner of its use and intended use, capable of causing death or serious bodily injury. Ashworth explained at trial that although A.W. stated on the surveillance video that Myers had cut him with a knife, A.W. never told Ashworth that Myers had a knife. Ashworth agreed at trial that in A.W.'s statement A.W. stated that he did not see the weapon, and A.W. also stated that it had to have been a very sharp object.

The store clerk that witnessed the incident testified at trial. The clerk testified that she knows Myers and A.W. Myers is known by the name of "Smiley" and A.W. is known as "Tony." She testified that she knew both of them because they periodically would come into the store. She explained that at the time of the incident she was the only clerk working and that Myers had been in and out of the store several times that night. When the incident occurred, the clerk was holding the front door of the store open and smoking a cigarette. She testified that she was

4

"pretty close" to the incident and that "Smiley" was sitting in a truck with his girlfriend and another female when A.W. pulled up in his car with "possibly one or two other people." According to the clerk, there was no conversation between the men before "Smiley" got out of the truck and came around A.W.'s car. The clerk explained that, before A.W. could get out of A.W.'s car, "Smiley" had "cut [A.W.'s] head open" with something "sharp" and "silver-looking" that "looked like a knife." She handed the phone to her son and told him to call 9-1-1. The clerk testified that, based upon what she could see, A.W. did not do anything to provoke Myers.

Myers testified that on the evening of the incident he was driving around in his vehicle and he had another male, a female that was his fiancée at the time, and another female in the car. Myers explained at trial that on the day before the incident, his fiancée at the time who had "a [drug] problem with Methamphetamines and . . . pills [and] stuff" had returned home after being gone three days. According to Myers, his fiancée had been "over-drugged" and she told him that five people had raped her, and it looked to Myers "like she had been violated." Myers testified that prior to the incident A.W. and the others in his car had threatened him and that he went to the convenience store because he knew that the store would have surveillance and he wanted protection "from being jumped by

5

three people that just got through threatening [his] life and the life of [his] loved ones[.]" He left the store and came back "a couple of times." He then brought his fiancée and two other people with him to the store.

According to Myers, he and his fiancée had just gotten out of their truck to go into the store when A.W. and the other males pulled up in a car. Myers testified that he thought that A.W. was armed, and that A.W. believed that Myers and Myers's fiancée were "snitches," because Myers had given law enforcement information regarding meth dealers and because Myers had testified against someone in a prior theft case. Myers explained that he had been at odds with gangs for a year or two. Myers testified that one of the males in A.W.'s vehicle made a "humping motion" towards Myers's fiancée and then the males laughed. According to Myers, he saw a baseball bat in the front seat of A.W.'s car. Myers testified that he went to the front of the car, yelled at A.W. and the others, and hit the hood of the car, trying to scare them away. According to Myers, when A.W. opened the door, Myers tried to keep A.W. "inside that door," and then A.W. "overpowered" Myers and A.W. got out. Myers testified that A.W. and the men in A.W.'s car "were about to get [Myers] pin up" where he could not defend himself, his fiancée, or the other female with him. According to Myers, when A.W. came toward him, Myers swung at him, and a novelty screwdriver that was part of

6

Myers's keychain caught A.W. Myers claimed he did not mean to cut A.W. Myers then yelled to his fiancée to get in the truck, and they left in the truck as quickly as possible. According to Myers, he believed that A.W. had learned from the other man that had left with Myers's cousin that Myers was at the store, and A.W. and the other men with A.W. had come to the store to hurt or kill Myers because of past confrontations and because Myers knew they were after his fiancée. Myers testified that he dropped the other female off and he and his fiancée hid for three days at another location. According to Myers, eleven men were watching them. Myers admitted that although he had his cell phone for the three days after the incident, he never called the police. Myers testified that he did not give a statement because he had been advised not to make a statement at all. Myers admitted to being on probation at the time of the incident. Myers explained that the video shows that after the altercation, but prior to the officers' arrival, A.W. and the two men with A.W. unloaded items out of their car and then the two men drove off and left A.W. at the store. According to Myers, A.W. did not tell the officers about the two men with A.W.

## AGGRAVATED ASSAULT

A person commits assault if he intentionally, knowingly, or recklessly causes bodily injury to another; or he intentionally or knowingly threatens another

7

with imminent bodily injury; or he intentionally or knowingly causes physical contact with another when the person knows or reasonably should believe that the other will regard the contact as offensive or provocative. Tex. Penal Code Ann. § 22.01 (West Supp. 2014).[2] Assault becomes aggravated assault if the person committing assault causes serious bodily injury or uses or exhibits a deadly weapon during the commission of the assault. Tex. Penal Code Ann. § 22.02(a) (West 2011). "Serious bodily injury" is defined as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Tex. Penal Code Ann. § 1.07(a)(46) (West Supp. 2014); *Tucker v. State*, 274 S.W.3d 688, 691 (Tex. Crim. App. 2008). The Penal Code does not require that the actor actually intend death or serious bodily injury. *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). An object is a deadly weapon if the actor intends a use of the object in which it would be capable of causing serious bodily injury. *Id*.

STANDARD OF REVIEW

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v.*

---

[2]We cite to the current version of the statute as the subsequent amendments do not affect the outcome of this appeal.

*Washington*, 466 U.S. 668, 686 (1984). To prevail on an ineffective assistance claim, Myers must establish that (1) trial counsel's representation fell below the objective standard of reasonableness, based on prevailing professional norms, and (2) there is a reasonable probability that the result of the proceeding would have been different but for counsel's deficient performance. *Id.* at 687-88, 694; *Perez v. State*, 310 S.W.3d 890, 892-93 (Tex. Crim. App. 2010); *Hernandez v. State*, 726 S.W.2d 53, 55-57 (Tex. Crim. App. 1986) (holding *Strickland* standard applied to ineffective assistance claims under the Texas Constitution). An appellant bears the burden of proving by a preponderance of the evidence that his counsel was ineffective. *See Perez*, 310 S.W.3d at 893; *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

When determining the validity of a defendant's claim of ineffective assistance of counsel, our judicial review must "be highly deferential to trial counsel and avoid the deleterious effects of hindsight." *Thompson*, 9 S.W.3d at 813 (citing *Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984)). There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that counsel was motivated by sound trial strategy. *Strickland*, 466 U.S. at 689; *Ex parte White*, 160 S.W.3d 46, 51 (Tex. Crim. App.

9

2004); *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000); *Chambers v. State*, 903 S.W.2d 21, 32-33 (Tex. Crim. App. 1995); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). Therefore, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *Tong*, 25 S.W.3d at 712. To overcome the presumption of reasonable professional assistance, "[a]ny allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson*, 9 S.W.3d at 814 (quoting *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)); *see also Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). The appropriate context is the totality of the representation; counsel is not to be judged on isolated portions of his representation. *See Thompson*, 9 S.W.3d at 813; *Solis v. State*, 792 S.W.2d 95, 98 (Tex. Crim. App. 1990).

Direct appeal is usually an inadequate vehicle for raising a claim of ineffective assistance of counsel because the record is generally undeveloped. *Goodspeed*, 187 S.W.3d at 392 (citing *Thompson*, 9 S.W.3d at 813-14); *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002) ("Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's

representation was so deficient and so lacking in tactical or strategic decisionmaking as to overcome the presumption that counsel's conduct was reasonable and professional."). "The reasonableness of counsel's choices often involves facts that do not appear in the appellate record." *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). A petition for writ of habeas corpus usually is the more appropriate method for a defendant to raise a claim of ineffective assistance of counsel. *Id.* Where the record is silent as to counsel's motivations, a reviewing court will not speculate thereon. *See Stults v. State*, 23 S.W.3d 198, 208 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd); *Gamble v. State*, 916 S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996, no pet.). When the record is silent as to the motivation of counsel, we will not find ineffective assistance of counsel unless counsel's conduct was "'so outrageous that no competent attorney would have engaged in it.'" *Goodspeed*, 187 S.W.3d at 392 (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

The right to effective assistance of counsel ensures the right to "reasonably effective assistance[,]" and it does not require that counsel must be perfect or the representation must be errorless. *See Ingham*, 679 S.W.2d at 509. Isolated failures to object to improper evidence or argument ordinarily do not constitute ineffective assistance of counsel. *See id.*; *Ewing v. State*, 549 S.W.2d 392, 395 (Tex. Crim.

11

App. 1977). In order to meet his burden regarding his claim that his counsel was ineffective for failing to object to evidence, the appellant must also establish that the trial court would have committed error in overruling such objection had an objection been made. *See Vaughn v. State*, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996).

## COUNSEL'S ALLEGED DEFICIENCIES

In his sole issue on appeal, Myers complains that he received ineffective assistance of counsel because his counsel did not object to (1) evidence of statements by a non-testifying witness identifying Myers as the perpetrator and (2) testimony by police officers regarding what caused the victim's injuries and whether the injuries were caused by a deadly weapon.

Officer Tyson and Sergeant Ashworth testified that A.W. identified Myers as his attacker, and a video recording of Officer Tyson's interview in which A.W. identified Myers as his attacker was admitted into evidence. On appeal, Myers argues that his trial counsel was ineffective because the attorney did not object to the testimony from the Officer about what the victim told the officers at the scene, and because the attorney failed to object to the video of the interview of A.W. which was admitted at trial wherein A.W. identified Myers as the attacker. Myers asserts that "[a] reasonably prudent attorney would have objected to all of the times

12

that the State introduced testimony of Anthony [A.W.]" because A.W. did not testify and those statements constituted hearsay, and that "[c]ounsel was not prepared to object to all of the evidence presented with respect to the witness that was not presented at trial."[3] Myers also complains that his counsel was ineffective because he "allowed police officers to speculate on what caused the injuries to [A.W.] and whether the injuries had to be caused by a deadly weapon." Myers contends that the testifying police officers were not qualified to give their opinions on those matters and that counsel's failure to object to the speculation "led to harmful error and was such deficient performance as to meet the first prong set forth in *Strickland*."

Officer Tyson opined that the manner of use or intended use of the instrument used by Myers to injure A.W. was capable of causing death or serious bodily injury and that A.W. suffered bodily injury as a result of being stabbed on the head. Sergeant Ashworth testified that, based on his review of the surveillance video and more than twenty years' experience in law enforcement, it appeared to him that the attacker made a motion that was consistent with the use of a knife, that

---

[3]Myers states in one sentence in his brief on appeal that Myers had "no chance to confront his accuser." We note that Myers does not brief any error under the Confrontation Clause, nor does he cite any authority to support such a claim. Accordingly, any such argument has not been properly briefed or presented on appeal. *See* Tex. R. App. P. 38.1(i).

it appeared to be a knowing and intentional act, and that the instrument used, both in the manner of its use and intended use, was capable of causing death or serious bodily injury. The store clerk testified that Myers "cut [A.W.'s] head open" with something "sharp" and "silver-looking" that "looked like a knife." Furthermore, although A.W. did not testify regarding his injuries, photographs depicting his injuries were admitted into evidence and the photographs appear to depict a cut on A.W.'s head.

## ANALYSIS

The record in the case at bar is silent as to why Myers's trial counsel may have chosen not to object to the video or why he chose not to make a hearsay objection to the particular evidence at trial. Where, as here, the record is silent as to the underlying reasons for counsel's strategy or conduct, we will not speculate about them. *See Bone*, 77 S.W.3d at 835 ("Ineffective assistance of counsel claims are not built on retrospective speculation[.]"); *see also Ex parte Varelas*, 45 S.W.3d 627, 632 (Tex. Crim. App. 2001) ("[T]he bare record does not reveal the nuances of trial strategy."). However, employing the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance[,]" we cannot say that the failure to object to such evidence and testimony was unsound trial strategy. *Strickland*, 466 U.S. at 689; *Ex parte White*,

14

160 S.W.3d at 51; *Tong*, 25 S.W.3d at 712. We decline to speculate about counsel's strategy or reasoning. The appellate record provides no basis for us to conclude that trial counsel's strategy was unreasonable based on prevailing professional norms.

In order for Myers to meet his burden regarding his claim that his counsel was ineffective for failing to object to the evidence, Myers must establish that the trial court would have committed error in overruling such objection had an objection been made. *See Vaughn*, 931 S.W.2d at 566. After the State concluded its case in chief, and in making the defense motion for a finding of not guilty due to insufficient evidence and the inability to cross-examine A.W., defense counsel argued that "the State's evidence mostly relied upon officers who were not there and two videos" that constitute "all kinds of hearsay[.]" The trial court denied defense counsel's motion. Assuming without deciding that defense counsel made a timely hearsay objection to the testimony of the two police officers and the video, it would not have been an abuse of discretion for the trial court to overrule the hearsay objection because A.W.'s statements are within an exception to the hearsay rule as a present sense impression, and the identification of Myers as the assailant would otherwise be cumulative of the eyewitness testimony of the store clerk who identified Myers as the assailant. *See* Tex. R. Evid. 803(1). Under the

15

present sense impression exception to the hearsay rule, a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter, is not excluded as hearsay. Tex. R. Evid. 803(1); *Rabbani v. State*, 847 S.W.2d 555, 560 (Tex. Crim. App. 1992). Failure to object to admissible evidence does not constitute ineffective assistance of counsel. *McFarland v. State*, 845 S.W.2d 824, 846 (Tex. Crim. App. 1992), *overruled on other grounds by Bingham v. State*, 915 S.W.2d 9 (Tex. Crim. App. 1994). Additionally, the failure to object to otherwise cumulative evidence will not support a claim of ineffective assistance of counsel. *Darby v. State*, 922 S.W.2d 614, 624 (Tex. App.—Fort Worth 1996, pet. ref'd); *Marlow v. State*, 886 S.W.2d 314, 318 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd).

On the record before us, Myers has not established that his counsel's representation fell below an objective standard of reasonableness. *Jackson*, 877 S.W.2d at 771; *Hernandez*, 726 S.W.2d at 55. We lack any basis in the record before us to conclude that the alleged failure of his defense counsel to object to the testimony and evidence in question was "so outrageous that no competent attorney would have engaged in it." *Goodspeed*, 187 S.W.3d at 392. Myers has failed to establish the first *Strickland* prong, i.e., that trial counsel's representation fell below the objective standard of reasonableness based on prevailing professional

16

norms. *See Strickland*, 466 U.S. at 700 ("Failure to make the required showing of . . . deficient performance . . . defeats the ineffectiveness claim."); *see also Estrada v. State*, 313 S.W.3d 274, 311 (Tex. Crim. App. 2010) (deciding the record was insufficient to address ineffective assistance of counsel claims where it did not sufficiently show that counsel's representation was deficient as to tactical and strategic decisionmaking).

When a defendant fails to satisfy one prong of the *Strickland* test, a court need not consider the other prong. *Garcia*, 57 S.W.3d at 440 (citing *Strickland*, 446 U.S. at 697). Nonetheless, we also conclude that Myers has failed to establish that there is a reasonable probability that the result of the proceeding would have been different but for counsel's alleged deficient performance. Even if we accept Myers's contention that defense counsel should have lodged additional hearsay objections to the video or that his attorney should have objected to the officer's testimony about the cut or use of a knife or "deadly weapon," the record does not support Myers's assertion that there is a reasonable probability that, but for his attorney's deficiency, the result of the trial would have been different. *See Strickland*, 466 U.S. at 689. The store clerk testified that she knew both A.W. and Myers by their nicknames, that she witnessed the incident, that a male she knew as "Smiley" was the assailant who attacked A.W., that it appeared to her that A.W.

17

did not provoke "Smiley," and she identified Myers at trial as the man she knew as "Smiley" and as the person who attacked A.W. Myers admitted at trial that he attacked A.W. The complained-of evidence concerns statements by A.W. identifying Myers as his assailant that are merely cumulative of other admissible evidence. Therefore, trial counsel's failure to object to the admission of the complained-of evidence, regardless of whether it was hearsay, does not render counsel's performance below an objective standard of reasonableness.

With respect to the testimony about the instrument Myers used to inflict the injury to A.W., expert testimony is not required to show an instrument can be used as a deadly weapon. *Denham v. State*, 574 S.W.2d 129, 131 (Tex. Crim. App. 1978). Wounds inflicted upon a victim are a factor to consider in determining whether a weapon qualifies as a deadly weapon. *Id*. at 130; *see also Alvarez v. State*, 566 S.W.2d 612, 614 (Tex. Crim. App. 1978). The fact finder may determine whether an object was a deadly weapon based on lay witness testimony alone. *See Denham*, 574 S.W.2d at 131; *Cruz v. State*, 576 S.W.2d 841, 842 (Tex. Crim. App. 1979); *Bailey v. State*, 46 S.W.3d 487, 492 (Tex. App.—Corpus Christi 2001, pet. ref'd); *Bui v. State*, 964 S.W.2d 335, 345 (Tex. App.—Texarkana 1998, pet. ref'd). The State need not prove that the defendant caused or even intended to cause death or serious bodily injury in order to justify a deadly weapon finding; rather the State

18

must only prove that the actual use or intended use of the object was capable of causing death or serious bodily injury. *See Garcia v. State*, 92 S.W.3d 574-76 (Tex. App.—Austin 2002, no pet.); *Brooks v. State*, 900 S.W.2d 468, 472 (Tex. App.—Texarkana 1995, no pet.).

Myers has failed to establish the first *Strickland* prong, i.e., that trial counsel's representation fell below the objective standard of reasonableness based on prevailing professional norms. *See Strickland*, 466 U.S. at 700; *see also Estrada*, 313 S.W.3d at 311. Furthermore, Myers has failed to demonstrate that, but for counsel's alleged errors, the outcome of his trial would have been different. *See Bone*, 77 S.W.3d at 833; *Graves v. State*, 310 S.W.3d 924, 929 (Tex. App.—Beaumont 2010, pet. ref'd). We reject Myers's ineffective assistance of counsel claim, and we overrule his issue.

We affirm the trial court's judgments.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on May 21, 2015
Opinion Delivered July 29, 2015
Do Not Publish

Before McKeithen, C.J., Horton and Johnson, JJ.

19